UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

HERMAN PARSON JR.,

       Plaintiff,

          v.

ROCHESTER INSTITUTE OF TECHNOLOGY,
PAUL MAUSHART, and DANIEL GIROUX,

       Defendants.

_____

Case No.:  1:16-cv-1045

**VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL**

## COMPLAINT AND JURY DEMAND

Plaintiff HERMAN PARSON JR. by his attorneys, THE REDDY LAW FIRM LLC complains against Defendants ROCHESTER INSTITUTE OF TECHNOLOGY, PAUL MAUSHART and DANIEL GIROUX (collectively "Defendants") as follows:

### Nature of the Action

1. This is an action brought pursuant to TITLE VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§§ 2000 et seq. ("TITLE VII"); New York State Human Rights Law, Executive Law Sections 290 et seq. ("NYSHRL"); and 42 U.S.C. § 1981 alleging discrimination based on race.

### The Parties

2. Plaintiff HERMAN PARSON JR. ("Plaintiff" or "Mr. Parson"), an individual African American male was an employee of Defendant ROCHESTER INSTITUTE OF TECHNOLOGY.

1

3.  Upon information and belief, Defendant ROCHESTER INSTITUTE OF TECHNOLOGY ("Defendant RIT") is a private coeducational university with nine colleges.  It has a primary campus is located in the County of Monroe.

4.  Upon information and belief, Defendant PAUL MAUSHART ("Defendant Maushart') is an individual Caucasian American male employed by Defendant RIT as  General Manager.

5.  Upon information and belief, Defendant DANIEL GIROUX ("Defendant Giroux") is an individual Caucasian American male employed by Defendant RIT as Production Manager.

6.  At all relevant times, Plaintiff was an employee as defined by relevant federal and state statues.

7.  At all relevant times, Defendant RIT was an employer as defined by relevant federal and state statutes.

### Jurisdiction and Venue

8.  Jurisdiction is conferred on this Court by 28 U.S.C § 1331, 1343.  This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to adjudicate Plaintiff's claims under New York state law.

9.  Venue is proper in the Western District pursuant to 28 U.S.C. §1391 (b) (2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

### Procedural Prerequisites

10. Plaintiff filed a charge of discrimination with the New York State Division of Human Rights ("DHR") which cross-filed with United States Equal Employment

Opportunity Commission ("EEOC") on or about March 2, 2016.  The EEOC issued a Notice of Right to Sue with regard to his claims on or about September 28, 2016.

11. Plaintiff files the Complaint fewer than ninety (90) days since he received his Notice of Right to Sue letter from the EEOC.

12.  Therefore, Plaintiff has commenced this action in a timely fashion.

## Factual Allegations

13.  On or about November 21, 2005, Mr. Parson was hired as a Production Cook with Defendant RIT's Dining Services Department.

14. On or about February 11, 2011, Mr. Parson was promoted to the position of Production Coordinator.  The title of Production Coordinator was later changed to that of Sous Chef in 2014.

15. For 9 years, Mr. Parsons excelled and was considered a diligent and productive employee with Defendant RIT.  He experiencing no issues with management until the line of supervision changed to include individual Defendants.

16. Beginning in 2014, Mr. Parson was supervised by Defendant Maushart who acted as General Manager and Defendant Giroux who acted as Production Manager.  From them on, Mr. Parsons would be subjected to a pattern of discrimination by way of disparate discipline, culminating in termination.

17. In February of 2016, Mr. Parson was wrongfully terminated. Defendant RIT claimed that the termination was the result of "failing to follow proper food safety procedures" and having "sent out a large pan of chicken breasts that were raw in the center".   Yet, that does not reflect the sequence of events that transpired.

3

18. On or about January 31, 2016, Mr. Parson performed the task of cooking chicken, following all the proper steps and even recording the meat as having reached an appropriate temperature of 165 degrees.   On February 2, 2016, a co-worker, Patty Falkinstein ("Ms. Falkinstein") took the same chicken out to slice it.  It was stated that a few pieces in the center of the pan had not completed cooking.  Defendants Maushart and Giroux had Mr. Parsons steam the entire batch and serve it (which in itself that was a health violation).  Mr. Parsons only followed the directions of Defendants Maushart and Giroux but he never sent out any undercooked chicken and had followed all proper protocol.

19. Prior to this time, Mr. Parsons had noticed and complained about his fellow co-workers (all of whom were Caucasian) for various health violations but upon information and belief, those individuals were not disciplined, much less terminated.

20. Mr. Parsons alleges that Defendants disciplined him disparately based on his race.  He had even inquired with Defendant Giroux as recently as a few weeks before his termination if there was a target on his back.

21. Caucasian co-worker, Katie Nelson ("Ms. Nelson") consistently went to the restroom with the same cooking gloves on and would come back to the kitchen and start cooking. Mr. Parson reported this health violation to Defendants on many occasions.  Upon information and belief, no action was taken to discipline. Ms. Nelson would continue in her unsanitary conduct.

22. Defendant Maushart himself would stick his fingers in fresh fruit with no gloves, have dirty fingernails, sweaty armpits and other serious hygiene concerns.  Mr.

4

Parson reported him to Dean Engdal since this posed a serious health violation.
No action was taken.  Mr. Parson continued to report Defendant Maushart's lack
of hygiene in the kitchen on many occasions but nothing was ever done.

23. Defendants engaged in a pattern of discrimination that allowed for the unfair
discipline of Mr. Parsons.

24. In October of 2014, Mr. Parsons was unfairly disciplined for the storage of food
items yet Caucasian co-workers, Ms. Nelson, Richard Cisco ("Mr. Cisco") and
Gary Stellman ("Mr. Stellman") were still at work on that day *after* Mr. Parsons
left, making it their responsibility to complete the task of storage.  Mr. Parsons
had followed proper protocol upon his departure as required.  Upon information
and belief, Defendants only disciplined Mr. Parson falling in line with the
favorable treatment regularly received by Caucasian co-workers to Mr. Parson's
detriment.

25. In April of 2015, Mr. Parson was given a written warning for the conduct of
Caucasian co-workers on a day he was not even present at work.  He had left
work on Thursday, April 23, 2015 having given instructions to his co-workers to
move frozen chicken to the cooler to thaw out for use the next day when he
would be off work.  He was then written up for incidents apparently stemming
from April 24, 2015 when he was not even present at work.

26. As far as other instances, Caucasian co-worker, Richard Decker defecated on
himself; walked through the kitchen area; spread feces in the kitchen, men's
room and elevator; created serious health violations and faced no consequences

despite Defendants knowledge of the act.  He regularly had hygiene issues but apparently, the rules did not apply to him.

27. Caucasian co-worker, Tom Savage routinely failed to wear  his uniform and was routinely late in direct violation of company policy with no consequences despite Defendants knowledge of the acts.

28. Caucasian co-worker, Mr. Stellman served undercooked meat on several occasions.  Defendants Maushart and Giroux would simply take it off the kitchen line. Upon information and belief, Mr. Stellman was not subjected to any disciplinary action.   The same occurred with Caucasian student workers served raw chicken fingers and Defendants simply said "these things happen" (*or words to that effect.*)

29. Caucasian co-worker, Ms. Falkinstein regularly sliced meat, failing to refrigerate it, and leaving it out to spoil or be served spoiled.  Defendants were aware of this regular conduct but never disciplined her.

30. In sum, Mr. Parsons was treated vastly differently from Caucasian co-workers and ultimately deprived of his livelihood and career after over a decade of devoted service.

## FIRST CAUSE OF ACTION:
### (Discrimination in Violation of TITLE VII and NYSHRL)

31. Plaintiff repeats and re-alleges every allegation contained in the preceding paragraphs with the same force and effect as though fully set forth.

32. Defendant RIT has discriminated against Plaintiff on the basis of his race in violation of TITLE VII and NYSHRL by disparately disciplining and wrongfully terminating him.

33. As a direct and proximate result of Defendant RIT's unlawful discriminatory conduct in violation of TITLE VII and NYSHRL, Plaintiff has suffered and continues to suffer severe economic, emotional and physical distress for which he is entitled to an award of monetary relief and other relief.

## SECOND CAUSE OF ACTION
### (Discrimination in Violation of NYSHRL against Individual Defendants)

34. Plaintiff repeats and re-alleges every allegation contained in the preceding paragraphs with the same force and effect as though fully set forth.

35. Defendants Maushart and Giroux engaged in practice of discrimination against Plaintiff in violation of NYSHRL on the basis of race (African-American) in the terms and conditions of his employment by aiding and abetting in the disparate treatment, discipline and termination.

36. As a result of these illegal actions, Plaintiff has suffered loss of past and future income in the form of overtime, salary and benefits, loss of career opportunity, injury to his health, emotional distress, mental anxiety, loss of enjoyment of life, damage to his reputation and humiliation.  Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of Defendants discriminatory practices unless and until this Court grants relief.

## THIRD CAUSE OF ACTION
### (Discrimination in Violation of 42 U.S.C. § 1981)

37. Plaintiff repeats and re-alleges every allegation contained in the preceding paragraphs with the same force and effect as though fully set forth herein.

38. Statement of equal rights: All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce

contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

39. Defendant RIT has discriminated against Plaintiff on account of his race, adversely affecting the terms and conditions of Plaintiff's employment.

40. By engaging in the conduct described above, Defendant RIT has deprived Plaintiff of his civil rights pursuant to 42 U.S.C. § 1981. In particular, the racial discrimination and disparate treatment suffered by Plaintiff violated the 42 U.S.C. § 1981.

41. The disparate treatment suffered by Plaintiff on account of his race was egregious and shocking to the conscience.  As a direct result, Plaintiff was caused to undergo humiliation and indignities from the racial discrimination he suffered, and was caused and will continue to undergo and endure severe mental anguish, humiliation and economic hardship as consequence thereof.

42. As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages, lost pay and injunctive relief and attorneys' fees.

## JURY DEMAND

43. Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, Plaintiff does hereby demand a jury trial on this action.

WHEREFORE, Plaintiff respectfully requests the following relief:

1.   Empanel a jury to hear Plaintiff's Complaint;
2.   Enter a judgment declaring the acts and practices of Defendants in violation of the laws of the United States and the State of New York;

3.    Award all actual damages including back pay, front pay, loss of future earnings and any and all other compensatory damages suffered by Plaintiff;

4.    Award punitive damages, including but not limited to emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses;

5.    Award reasonable attorneys' fees and costs; and

6.    Such other and further relief as to this Court may appear proper and just.

DATED:    Buffalo, New York
          December 29, 2016

/s/ Prathima Reddy
Prathima Reddy Esq.
The Reddy Law Firm LLC
*Attorneys for Plaintiff*
455 Linwood Avenue
Buffalo, New York 14209
Office: (716) 725-0139
Fax: (716) 625-1519
Email: preddy@thereddylaw.com

VERIFICATION

STATE OF NEW YORK          )
COUNTY OF MONROE               ) ss.


HERMAN PARSONS JR. deposes and says that he is the Plaintiff in this action; that he has read the foregoing COMPLAINT and knows the contents thereof; that the same is true to the knowledge of deponent, except as to the matters therein stated to be alleged on information and belief, and that as to those matters, he believes them to be true.


HERMAN PARSONS JR.


Subscribed and sworn to before me
this 2 9 day of December 2016.

12/29/16

JACOB SCOTT
Notary Public, State of New York
No. 01SC5344943
Qualified in Genesee County
Commission Expires July 11, 2020